UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**WAYNE DELAGARDELLE**             **CIVIL ACTION**

**VERSUS**             **NO.  08-1581**

**ROBERT TAPPIN, WARDEN**             **SECTION "J"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Wayne DeLaGardelle, is incarcerated in the Morehouse Parish Detention Center in Collinston, Louisiana.[2] On December 17, 2004, DeLaGardelle was charged by bill of information in Jefferson Parish with aggravated burglary and receiving stolen goods.[3] The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> Rosemary Turner McDonald testified that she was upstairs in her bedroom when she was alerted to someone breaking into her house in Jefferson Parish on December 4, 2004. When she went downstairs, she saw the defendant, whom she identified in court, outside kicking in her back door. After the defendant did not respond to her command to stop or she would call the police, McDonald ran out of her front door because she was scared. The defendant locked the front door behind her. She did not give the defendant permission to enter her home. McDonald did not re-enter her home until the police arrived.
> Deputy Dave Jackson of the Jefferson Parish Sheriff's Office testified that he responded to a burglary call in Gretna on that date. He encountered McDonald running down the street screaming that someone was inside her house. Deputy Jackson was unable to enter the front door of the McDonald's residence because it was locked. When he went to the rear of the house, he saw the kitchen door was kicked open. Upon entering the house, he saw a single trail of muddy footprints that went through the kitchen, into the living room, and up the stairs. He followed the footprints upstairs to the master bedroom where he found the defendant looking at him from the closet. No one else was in the house. Deputy Jackson ordered the defendant out of the bedroom closet. While the defendant was in the closet, Deputy Jackson was unable to see the defendant's left hand. When the defendant refused to come out, Deputy Jackson grabbed the

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 3, Bill of Information, 12/17/04.

defendant's arm and pulled him out. After the defendant was subdued with a taser, Deputy Jackson noticed pills falling from the defendant's mouth. He opined that the defendant appeared to be on drugs. Later that same day, Deputy Jackson checked the closet where the defendant was hiding, and found a knife with a black "corrugated" handle and an open pill bottle with the victim's name on it on the floor. The victim's wallet was found on the defendant.

McDonald identified a photograph of her black handled knives that she kept on her kitchen counter top. She did not bring the knife belonging to her kitchen knife set upstairs and throw it into the closet. The knife also was not in her closet before she ran out of the house. The last time she saw the knife before this incident, it was in the knife block on the kitchen counter. McDonald admitted that she never saw the defendant in possession of the knife, because she ran. When the police returned the knife to her after the incident, she cleaned mud off it. She also cleaned muddy footprints off her carpeting. She identified photographs of her carpeting taken after the incident that showed the muddy footprints, not made by her, going up to the master bedroom. McDonald also identified several photographs of her bedroom and its closet in disarray that were not in that condition before she went downstairs on the day of the incident. The photograph of the closet depicted a prescription bottle and a knife. The prescription bottle was full and on her dresser before she went downstairs, not in the closet. When the prescription bottle was returned, the majority of the pills were gone, because they were on the floor or swallowed by the defendant, she opined. McDonald's son lives with her, but he was not home at the time.

State v. DeLaGardelle, 957 So.2d 825, 827-28 (La. App. 5th Cir. 2007); State Record Volume 1 of 3, Louisiana Fifth Circuit Court of Appeal Opinion, 06-KA-898, pp. 3-4, April 11, 2007.

Having waived his right to a jury trial, DeLaGardelle was tried before a judge on August 24, 2005 on the aggravated burglary count.[4] The state trial court found him guilty as charged.[5] Prior to sentencing, DeLaGardelle's counsel filed motions for post verdict judgment of acquittal and for a new trial.[6]

The state trial court denied these motions and counsel's oral motion for entry of a lesser verdict at a hearing held on March 10, 2006.[7] That same day, the State entered a nolle prosequi as to the receiving stolen goods count.[8] The state trial court also sentenced DeLaGardelle to 15 years in prison on the aggravated burglary conviction.[9]

Thereafter, on March 13, 2006, the State filed a multiple offender bill to which DeLaGardelle entered a plea of guilty as a second offender.[10] The state trial court re-sentenced him as a multiple offender to serve 20 years in prison without benefit of parole,

---

[4] St. Rec. Vol. 1of 3, Trial Minutes, 8/24/05; St. Rec. Vol. 2 of 3, Trial Transcript, 8/24/05.

[5] St. Rec. Vol. 1of 3, Trial Minutes, 8/24/05; St. Rec. Vol. 2 of 3, Trial Transcript, p. 96, 8/24/05.

[6] St. Rec. Vol. 1 of 3, Motion for Post Verdict Judgment of Acquittal, 10/11/05; Motion for New Trial, 10/11/05; see also, Minutes of Motion Hearing, 1/9/06.

[7] St. Rec. Vol. 1 of 3, Sentencing Minutes, 3/10/06; St. Rec. Vol. 2 of 3, Sentencing Transcript, pp. 10-11, 3/10/06.

[8] St. Rec. Vol. 1 of 3, Sentencing Minutes, 3/10/06; Bill of Information, 12/17/04 (handwritten notation); St. Rec. Vol. 2 of 3, Sentencing Transcript, pp. 13-14, 3/10/06.

[9] St. Rec. Vol. 1 of 3, Sentencing Minutes, 3/10/06; St. Rec. Vol. 2 of 3, Sentencing Transcript, pp. 12, 3/10/06.

[10] St. Rec. Vol. 1 of 3, Multiple Bill, 3/13/06; Waiver of Rights - Plea of Guilty Multiple Offender, 3/13/06; Multiple Bill Hearing Minutes, 3/13/06; St. Rec. Vol. 2 of 3, Sentencing Transcript, pp. 6-7, 3/13/06.

probation or suspension of sentence.[11] The court later denied DeLaGardelle's motion to reconsider that sentence.[12]

On direct appeal, DeLaGardelle's appointed counsel argued that the state trial court erred in denying the motion for a new trial based on insufficient evidence to establish that he had armed himself with a knife.[13] On April 11, 2007, the Louisiana Fifth Circuit Court of Appeal, relying on Jackson v. Virginia, 443 U.S. 307 (1979), and related state case law, affirmed the conviction and sentence, finding no merit to the claim.[14] The court also remanded the matter only for the trial court to notify DeLaGardelle of the applicable post-conviction limitations. The trial court complied with this directive on May 11, 2007.[15]

---

[11]St. Rec. Vol. 1 of 3, Multiple Bill Hearing Minutes, 3/13/06; St. Rec. Vol. 2 of 3, Sentencing Transcript, pp. 7-8, 3/13/06.

[12]St. Rec. Vol. 1 of 3, Motion to Reconsider Sentence, 3/23/06; Trial Court Order, 5/5/06.

[13]St. Rec. Vol. 2 of 3, Appeal Brief, 06-KA-0898, 12/18/06; State v. DeLaGardelle, 957 So.2d at 828; St. Rec. Vol. 1 of 3, 5th Cir. Opinion, 06-KA-898, p. 5, 4/11/07.

[14]State v. DeLaGardelle, 957 So.2d at 832; St. Rec. Vol. 1 of 3, 5th Cir. Opinion, 06-KA-898, p. 11, 4/11/07.

[15]St. Rec. Vol. 1 of 3, Letter from Trial Court, 5/11/07.

DeLaGardelle timely filed a pro se writ application with the Louisiana Supreme Court raising the same grounds for relief.[16]  On November 21, 2007, the Louisiana Supreme Court denied the writ application without reasons.[17]

DeLaGardelle's conviction became final 90 days later, on February 19, 2008, when he did not file a writ application in the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. S. Ct. Rule 13(1).

## II.   FEDERAL HABEAS PETITION

On April 10, 2008, DeLaGardelle filed a petition for federal habeas corpus relief in this court alleging that the state trial court erred in denying the motion for a new trial based on insufficient evidence to prove that he had armed himself with a knife.[18]  The State filed an opposition in response to DeLaGardelle's petition, arguing that the claim is without merit and that he is not entitled to relief.

---

[16]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 07-KO-1067, 5/22/07 (postmarked 5/8/07).

[17]State v. DeLaGardelle, 967 So.2d 1154 (La. 2007); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2007-KO-1067, 11/21/07.

[18]Rec. Doc. No. 1.

6

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[19] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to DeLaGardelle's petition, which, for reasons discussed below, is deemed filed in this federal court on April 7, 2008.[20]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20

---

[19] The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[20] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Cosse's petition was filed by the clerk of court on March 6, 2008, when the filing fee was paid. Cosse signed the petition on February 7, 2008. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. See Cousin, 310 F.3d at 843 (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

7

(5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). The State has not raised any of these preliminary defenses and my review of the record does not reveal that any such defense would apply.

IV.     STANDARDS OF A MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.

2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.     DENIAL OF MOTION FOR A NEW TRIAL

DeLaGardelle argues that the state trial court erred when it denied the motion for a new trial on the aggravated burglary charge.  He alleges that the evidence presented at trial was not sufficient to establish beyond a reasonable doubt that he was ever armed with a knife after he entered the home or when the police officer found him in the closet.

These arguments were asserted on direct appeal in the state court.  The Louisiana Fourth Circuit issued the last reasoned decision denying the claims as meritless.  Relying on the well-established standard of Jackson v. Virginia, 443 U.S. at 307, the court considered the evidence, in a light most favorable to the prosecution, and resolved that the evidence was sufficient to support the verdict.

Federal courts have held that a state court's denial of a motion for a new trial does not necessarily constitute a violation of a federal constitutional right.  Haygood v. Quarterman, 239 Fed. Appx. 39, 42 (5th Cir. Jun. 14, 2007) (citing Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir.1991)).  Thus, for DeLaGardelle's claim to proceed, he must establish that the denial of the motion for a new trial violated some specific constitutional right.  Construing his habeas petition broadly, DeLaGardelle argues that the denial violated due process because the evidence was not sufficient to support a

verdict of aggravated burglary, as opposed to simple burglary. DeLaGardelle also alleges that it was not sufficient for the state trial court to base the verdict on the circumstantial evidence surrounding the location of the knife.

Louisiana law, however, allows a crime to be proven by circumstantial evidence. "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, but must apply the Jackson and AEDPA standard of review. Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992) (citing Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir. 1990)). As for the circumstantial evidence rule, "[t]his is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test . . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." State v. Porretto, 468 So. 2d 1142, 1146 (La. 1985); accord State v. Williams, 693 So. 2d 204, 208 (La. App. 4th Cir. 1997).

The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." State v. Maxie, 614 So. 2d 1318, 1321 (La. App. 3d

Cir. 1993); accord State v. Williams, 693 So. 2d at 208. I will therefore address the standards found in Jackson, 443 U.S. at 307, which was relied upon by the Louisiana Fifth Circuit in denying DeLaGardelle's claim on direct appeal.[21]

Under Jackson, the court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. Jackson, 443 U.S. at 319; Gilley, 968 F.2d at 467; Guzman v. Lensing, 934 F.2d 80, 82 (5th Cir. 1991). On federal habeas corpus review, this court also must apply the Jackson standard. Gilley, 968 F.2d at 467 (citing Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir. 1990)).

Louisiana law defines aggravated burglary in La. Rev. Stat. Ann. § 14:60:

> [T]he unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
> (1) Is armed with a dangerous weapon; or
> (2) After entering arms himself with a dangerous weapon; or
> (3) Commits a battery upon any person while in such place, or in entering or leaving such place.

State v. Hall, 796 So.2d 164, 167-68 (La. App. 2d Cir. 2001).

DeLaGardelle was convicted of aggravated burglary by the state trial court after the State established the second prong, that he armed himself with a knife from the

---

[21] A claim of insufficient evidence presents a mixed question of law and fact. Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995). The court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

victim's kitchen after breaking into her home. After hearing the evidence at trial, the state trial court concluded that, "beyond a reasonable doubt there was constructive possession by the defendant of this knife . . . I think all the facts and evidence point to the fact that at some point this was probably in his actual possession. It certainly was in his constructive possession."[22] Thus, the state trial court found DeLaGardelle to be guilty of aggravated burglary.

The evidence at trial established that, on December 4, 2004, McDonald was upstairs in the victim's bedroom when she heard knocking and her dog began to bark.[23] She went downstairs and saw DeLaGardelle kicking in the back door.[24] He did not heed her call to stop, so she ran out of the front door as DeLaGardelle entered her home.[25]

The victim's knife block was on the kitchen counter within one step of the door where he entered.[26] One of the kitchen knives from that set was found on the floor of her bedroom closet by a Jefferson Parish sheriff's deputy.[27] McDonald did not bring any of

---

[22] Id., p. 96.

[23] St. Rec. Vol. 2 of 3, Trial Transcript, pp. 30-31.

[24] Id., pp. 30-31.

[25] Id., pp. 32, 40.

[26] Id., p. 34.

[27] Id., p. 39.

her knives upstairs or throw one down on the closet floor in her bedroom.[28] She was confident that all of the knives were in the kitchen knife block before this incident.[29]

On the day of the burglary, DeLaGardelle left muddy foot prints on the carpeting in McDonald's home.[30] The footprints were not there when McDonald ran out of the house.[31] These muddy footprints led upstairs into McDonald's bedroom.[32] In her bedroom, her personal items were thrown around and disheveled.[33] Her room was not like it had been when she left it.[34]

McDonald also had a full bottle of prescription pain medication on the dresser next to her bed.[35] After the burglary, the bottle was found on the floor of her closet with most

---

[28] Id., p. 34.

[29] Id., pp. 47-48.

[30] Id., pp. 35, 59.

[31] Id., p. 35.

[32] Id., p. 35.

[33] Id., pp. 35-36, 59.

[34] Id., p. 36.

[35] Id., pp. 37, 53.

of the pills missing.[36] Her wallet was also found in DeLaGardelle's pocket upon his arrest.[37]

After being called to the scene, Deputy Jackson entered the home through the broken back door.[38] He followed the muddy footsteps upstairs into McDonald's bedroom.[39] He then saw a man, later determined to be DeLaGardelle, peeking out of the closet at him.[40] The deputy drew his weapon and ordered DeLaGardelle to come out of the closet.[41] He refused, so the deputy grabbed his arm and pulled him out.[42] The deputies subdued him with a taser.[43]

DeLaGardelle was wearing boxer shorts and had pills falling out of his mouth.[44] Inside the bedroom closet, Deputy Jackson found a kitchen knife and an open pill bottle

---

[36] Id., pp. 38, 54.

[37] Id., p. 39.

[38] Id., p. 59.

[39] Id., pp. 59-60.

[40] Id., p. 60.

[41] Id., p. 60.

[42] Id., p. 60.

[43] Id., p. 61.

[44] Id., p. 61.

with McDonald's name on it.[45]  Neither McDonald nor Deputy Jackson saw DeLaGardelle with the knife in his hand.[46]

The deputy also recovered McDonald's wallet from the waistband of DeLaGardelle's boxer shorts.[47] The deputies could not recover prints from the knife because the handle was not smooth.[48]

From this evidence, a reasonable factfinder could easily have found that DeLaGardelle entered the victim's home with the intent to take or steal something of value. He used force to enter the home, which caused the victim to fear for her life, before she ran out the front door. The evidence demonstrated that a knife from the victim's knife set, located in the kitchen near the door where he entered, was found with DeLaGardelle upstairs, in the victim's bedroom closet. DeLaGardelle also had taken possession of McDonald's wallet and prescription pills.

Considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could easily find that the evidence was more than sufficient to establish that DeLaGardelle entered McDonald's home with the intent to take something

---

[45] Id., p. 61.

[46] Id., pp. 49, 79.

[47] Id., p. 68.

[48] Id., pp. 62, 84.

of value and armed himself with the knife after entry. This was more than sufficient to support the verdict of guilty of aggravated burglary.

DeLaGardelle has not shown that the state court's denial of relief was contrary to, or an unreasonable application of, federal law. He is not entitled to relief on this claim.

### RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Wayne DeLaGardelle for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __10th__ day of July, 2008.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE